**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

GWR MEDICAL, INC.,            :
                                  :
            **Plaintiff,**        :
      **vs.**                        :      **CIVIL NO. 07-1103**
                                    :
HECTOR M. BAEZ,             :
                                    :
           **Defendant**       :
_____:

**RUFE, J.**                                                    **March 13, 2008**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant Hector M. Baez's Motion to Dismiss the Amended Complaint [Doc. No. 17], Plaintiff GWR Medical, Inc.'s Response thereto [Doc. No. 18], and Defendant's Reply [Doc. No. 21]. After reviewing the pleadings, the applicable law, and after a hearing thereon, the Court will grant the Motion in part and deny it in part, for the reasons stated below.

## I. BACKGROUND

This declaratory judgment and damages action arises out of a contractual and trade secrets dispute between GWR Medical, Inc., a manufacturer and seller of various health-care products, and Hector M. Baez, one of GWR's former sales representatives. GWR's claims include: (1) violation of the Computer Fraud and Abuse Act; (2) violation of Pennsylvania's Trade Secrets Act; (3) conversion; (4) breach of contract; (5) declaratory judgment; and (6) breach of fiduciary duty.

On May 9, 2003, GWR and Baez entered into the contract that forms the basis of this dispute ("The Contract"), in which GWR grants Baez a "non-exclusive opportunity" to promote

GWR's products within a specified geographic territory.[1]   The Contract generally gives Baez the right to market and sell GWR's products and trademarks, "including topical hyperbaric oxygen delivery systems known as the O2 Series Topical Hyperbaric Oxygen Devices,"[2] to medical providers.

The contract provides that GWR "may in its sole and absolute discretion, terminate the Agreement without cause and for any reason whatsoever, subject to giving [Baez] no less than thirty days prior written notice."[3]   This termination clause provides that Baez "will receive commissions on any payments received by GWR up to the final termination date."[4]   The Contract additionally states that it shall be "governed by the laws of the Commonwealth of Pennsylvania, excluding such state's rules relating to conflicts of laws, and its form, execution, validity, construction and effect shall be determined in accordance with such laws."[5]   Lastly, it provides that "the United States District Court for the Eastern District of Pennsylvania and the Court of Common Pleas of Delaware County, Pennsylvania shall be the exclusive forum [sic] for the resolution of any disputes arising hereunder.   The parties irrevocably consent to the jurisdiction and venue of such federal and state courts."[6]

GWR and Baez operated under the Contract without incident for three-and-one-half

---

[1]   Amend. Compl., Ex. A ("Contract"), at 1.

[2]   Id.

[3]   Id. at 5.

[4]   Id.

[5]   Id. at 6.

[6]   Id.

years.  GWR then terminated the Contract by letter dated January 23, 2007, demanding that Baez return GWR's proprietary business information and trade secrets.[7]   GWR also "tendered all sums due to [Baez] for commissions and other funds under the [Contract]."[8]  GWR then filed this suit on March 20, 2007, seeking a declaration that it lawfully terminated the Contract as well as monetary damages.[9]

GWR subsequently filed an amended complaint adding a cause of action under the Computer Fraud and Abuse Act ("CFAA"),[10] alleging  federal question jurisdiction in this Court.[11] GWR contends that Baez received trade secrets while he was employed, including training manuals, product samples, a sample software report, electronic copies of "powerpoint" presentations, the Wound Management Program, Wound/Matrix software, research, at least one training CD-ROM for proprietary Management Information System, showing all "functionality, electronic records of patient accounts, software reports and marketing materials."[12]  In particular, Baez received a CD-ROM containing "animated screen shots with voice-overs of the Management Information System and its functionality."[13]  Baez refused to return this CD-ROM after his termination, and allegedly intended to use it as "leverage in this dispute."[14]

---

[7]  Compl. at  7–8.

[8]  Id.  at 9.

[9]  Id. at 21.

[10]  Fraud and Related Activity in Connection With Computers, 18 U.S.C. § 1030.

[11]  Amend. Compl. [Doc. No. 15].

[12]  Geary Aff. at 2.

[13]  Id. at 6.

[14]  Amend. Compl. at 6.

Baez now moves to dismiss the Amended Complaint for lack of diversity jurisdiction, lack of federal question jurisdiction, and improper venue.   He alleges that GWR fails to meet the amount in controversy requirement for diversity jurisdiction.  He also contends that GWR does not state a cause of action under the CFAA, because the CD-ROM does not fit the definition of a "computer" for purposes of establishing federal question jurisdiction under the CFAA.  Lastly, Baez argues that venue is not appropriate in this jurisdiction, including an allegation of insufficient personal jurisdiction, and seeks to transfer the matter to the District of Puerto Rico.

On February 12, 2008, as directed by the Court, the parties presented testimony from two competing experts on whether the CD-ROM in question could be considered a "computer" as defined by the CFAA.  The issue is now ripe for determination.

## II. DISCUSSION

This Motion to Dismiss or to Transfer is governed by Federal Rules of Civil Procedure 12(b)(1), lack of subject matter jurisdiction, 12(b)(2), lack of personal jurisdiction, 12(b)(3) and 28 U.S.C. § 1406(b), improper venue, and 12(b)(6) and 12(h)(3), for failure to state a claim upon which relief can be granted.

### A. Whether the Court has Federal Question Jurisdiction

A claim may be dismissed for lack of federal question jurisdiction if it is "not colorable, i.e. if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial or frivolous."[15]  The pleading must contain "something more . . . than . . . a statement of facts that merely creates suspicion [of] a legally cognizable right of action, on the assumption that all the

---

[15]Arbaugh v. Y&H Corp, 546 U.S. 500, 513 (2006) (citing Bell v. Hood, 327 U.S. 678, 682-83 (1946)).

allegations in the complaint are true."[16]  In addition, if the jurisdiction turns on contested facts,  "the trial judge may be authorized to review the evidence and resolve the dispute on her own."[17]  Baez asserts that GWR added its CFAA claim only for the purpose of establishing jurisdiction, and that it is frivolous because the facts of this case do not fit a cognizable claim under CFAA.[18]

The question of whether this Court has federal question jurisdiction hinges on the determination of whether the CD-ROM can be considered a "computer" under the CFAA.  GWR claims it is a "computer," thus falling within the purview of the CFAA.[19]  Conversely, Baez argues that the CD-ROM cannot be considered a computer under the CFAA, and therefore that the claim should be dismissed.[20]

Under the CFAA, "whoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication . . . " is in violation of the Act.[21]  Section (a)(4) states that, "whoever knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . ." is in violation of the Act.[22]  GWR asserts that

---

[16]  Bell Atlantic Corp. v. Twombly, 127 S. Ct 1955, 1965 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002)).

[17]  Arbaugh, 546 U.S. at 514.

[18]  Def.'s Mot. at 6.

[19]  Amend. Compl. at 10.

[20]  Def.'s Mot. at 5.

[21]  18 U.S.C. § 1030(a)(2)(C).

[22]  Id. at § 1030(a)(4).

Baez exceeded his access to at least one CD-ROM containing GWR's trade secrets.[23]   GWR argues

that Baez's dishonesty in retaining the information exhibits an intent to defraud.[24]

The CFAA defines a computer as

An electronic, magnetic, optical, electrochemical, or other high speed data processing
device that performs logical, arithmetic or storage functions, and includes any data
storage facility or communications facility directly related to or operating in
conjunction with such device, but does not include an automated typewriter or
typesetter, a portable hand held calculator, or similar device.[25]

Baez asserts that a CD-ROM is not a "data storage facility" for purposes of the Act, nor does it

process information, and cannot be used to support a claim that he has ongoing access to GWR's

computers, while GWR continues to assert that it is.[26]

While the CFAA is relatively new legislation, several cases have addressed CD-

ROMs and ongoing access to computers under the Act.  While there is no governing Third Circuit

case, Brett Senior & Associates, P.C. v. Fitzgerald,[27] decided in the Eastern District of Pennsylvania,

presents similar issues.  In Fitzgerald, the district court held that an employee who copied a list of

clients for those who agreed to follow him to his new employer was not in violation of CFAA.  On

motion for summary judgment, the court concluded that the former employee had not accessed or

altered information without authorization, thus dismissing the claim.[28]   Factually similar to the

---

[23] Def.'s Mot. at 10.

[24] Id.

[25] 18 U.S.C. § 1030(e)(1).

[26] Def.'s Mot. at 6; Amend. Compl. at 10.

[27] No.. 06-1412, 2007 WL 2043377, at *3  (E.D. Pa. July 13, 2007).

[28] Id.

instant case, Fitzgerald did not address the issue herein: whether the CD-ROM obtained by Baez can still access an ongoing computer system of GWR's.

At a hearing held on February 12, 2008, GWR presented the testimony of its Vice President and Chief Operating Officer, Sean Geary, who testified that the CD-ROM is not "static," it's "interactive."[29]  He also stated that the CD-ROM is a copy of a hard drive, and is used as a tool for training, by showing how the computer applications function.[30]  Geary explained that the CD-ROM, when inserted into a computer, takes the viewer to a page where there are a number of links.[31] These links take the viewer through a tutorial program.  However, upon cross-examination, Mr. Geary admitted that every link leads to a page self-contained within the CD-ROM, and does not itself access the internet.[32]  He also admitted that the CD-ROM could not be altered unless "our programmers . . . go in and change the code and update the code . . . only if our programmers made it back at our main office."[33]  In other words, the CD-ROM contains copies of documents that can only be altered from one of GWR's main computers.

GWR then presented the testimony of Paul David Amer, a Professor of Computer Sciences at the University of Delaware.  Professor Amer described a CD-ROM, as well as a hard drive, explaining the difference between a calculator and a CD-ROM.  He gave his opinion that although a calculator is not protected under the Act, as it is not "high speed," a CD-ROM is a

---

[29] N.T. at 11.

[30] Id. at 9.

[31] Id.

[32] Id. at 12.

[33] Id.

computer under the CFAA because it is a "high speed data processing device."[34]   Professor Amer admitted that the definition of computer under the Act is broad, and that a music CD or a DVD would also fit the definition of a computer if analyzed under the CFAA, though he confessed they were not computers in his everyday understanding of the terms.[35]   On cross-examination, Professor Amer admitted that a CD cannot operate without electricity, and cannot process anything if static, such as sitting on a table.[36]   He stated that "nothing would be a computer without electricity."[37]

Baez countered with the expert testimony of Milo M.K. Martin, Associate Professor of Computer Sciences at the University of Pennsylvania.  Professor Martin expressed the opinion that a CD-ROM, and in particular the CD-ROM in this case, is not a computer as defined by the statute, nor under any general understanding of the term.[38]   He attempted to distinguish between a "data storage facility," protected under the act, and a "data storage device," which is not.  Professor Martin testified that a data storage facility, according to computer industry professionals, is an active system with the ability to interact, while a data storage device is just "anything that can record data," such as a book.[39]   A CD-ROM fits into the latter category.  He admitted that a CD-ROM can store recorded information,[40] and transfer it from one computer to another,[41] though he

---

[34] Id. at 21, 25.

[35] Id. at 38.

[36] Id. at 33.

[37] Id. at 32.

[38] Id. at 46, 52.

[39] Id. at 46-47.

[40] Id. at 57.

[41] Id. at 56-57.

did not concede that it could "process" information, as required by the CFAA.[42]

The CFAA definition of a computer has three requirements: (1) "An electronic, magnetic, optical, electrochemical, or other high speed data *processing* device;" (2) "performing logical, arithmetic, or storage functions;" which (3) "includes any data storage facility or communications facility directly related to or operating in conjunction with such device."[43]  As Professor Amer testified, and Professor Martin agreed, a CD-ROM is an optical, high speed device which performs storage functions.  However, the expert witnesses disagreed on whether a CD-ROM processes information, communicates information, or includes a data storage facility.  Because the CD-ROM at issue must meet all three parts of the statutory definition of a computer, a failure of one part leads to the conclusion that a CD-ROM cannot be defined as a computer under the CFAA.

Based on the testimony of both experts, this Court finds that a CD-ROM does not, in and of itself, *process* information.  The CD-ROM at issue is analogous to a compilation of documents and training materials, and cannot be considered a computer under the CFAA without processing capabilities.  Moreover, GWR does not assert that the CD-ROM was ever used, nor that Baez has ongoing access to GWR's computer system, as required by the Act.  Baez was given the CD-ROM appropriately and in the course of his business.  Retaining the CD-ROM does not automatically confer federal question jurisdiction under the CFAA, because the CD-ROM does not meet the definition of a computer with ongoing access.  The Court therefore finds that no basis for federal question jurisdiction, and the Defendant's Motion is Granted in relevant part.

---

[42] Id. at 57.

[43] 18 U.S.C. § 1030(e)(1) (emphasis added).

**B. Whether the Court has Diversity Jurisdiction**

Baez next argues that GWR has not met the amount-in-controversy requirement for diversity jurisdiction imposed by 28 U.S.C. § 1332(a).[44]  GWR requests damages resulting in over $300,000 in expenses for "creating and maintaining confidential and proprietary information and trade secrets," at least $259,000 in commissions and refunds under the contract, and "exemplary damages" in twice the amount of any monetary damage award.[45]  GWR also asks for a declaratory judgment, alleging a value of over $100,000 per year under the contract, which is calculated in assessing the amount in controversy.[46]  In an affidavit responding to the Court's Order of June 28, 2007, GWR's Vice President Sean Geary detailed the monetary bases for its damages claims: 1) the cost of hiring additional employees in Puerto Rico, at a salary of at least $100,000 annually, with $6,000 monthly in operating costs; 2) compensations resulting under the contract of $109,624 paid to Defendant in 2007, $151,753 in 2006, $73,744 in 2005 and $28,350 in 2004; and 3) the value of the declaratory judgment, measured by the value of the contract, at over $300,000.[47]

Because GWR's claim under the CFAA is not valid, plaintiff is essentially bringing this action under Pennsylvania's Trade Secrets Act, which includes misappropriation of trade secrets, conversion, and breach of fiduciary duty, as well as bringing a claim for breach of

---

[44]  Under 28 U.S.C. § 1332(a), the district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000," and where there is diversity of citizenship among the parties.  Baez, a citizen of Puerto Rico, does not dispute that his citizenship is diverse from GWR's, which is a citizen of Pennsylvania.

[45]  Amend. Compl. at 5, 14.

[46]  Hunt v. Wash. Apple Advert. Comm'n, 432 U.S. 333 (1977)(holding that the amount in controversy is measured by the value of the object of the litigation).

[47]  Geary Aff. at  3-4.

-10-

contract.[48]  Baez argues that none of GWR's bases for the alleged damages are actually relevant to the calculation of plaintiff's damages as a matter of law.[49]  He asserts that none of Geary's calculations show pecuniary consequences flowing from defendant's alleged possession of Plaintiff's materials.[50]  Baez argues that there is only a *de minimis* loss to GWR because the *original* training CD-ROM and hard drive are still in GWR's hands and the cost of making another copy of the CD-ROM is negligible.[51]  Lastly, Baez argues that the amount in controversy must be measured not by the principle amount involved, but by the pecuniary consequences to those involved in the litigation.[52]

The test of whether GWR has satisfied the statutory amount in controversy is lenient, as it must be at the pleadings stage.  The Third Circuit has held that the statutory amount "need not be proven; rather, the amount is judged from the face of the complaint and is generally established by a good faith allegation."[53]  Further, "[a] complaint will be deemed to satisfy the required amount in controversy unless the defendant can show to a legal certainty that the plaintiff cannot recover that amount."[54]  In considering whether the amount in controversy has been met, the Court may look

---

[48] 12 Pa. C.S.A. §§ 5302, 5304.

[49] Def.'s Mot. at 9.

[50] Id.

[51] Id.

[52] Id. at 11 (citing Thompson v. Gaskill, 315 U.S. 442, 447 (1942)).

[53] Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004).

[54] Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283 (1938)).

to affidavits of the parties, and weigh the evidence presented by both.[55]

The purpose of awarding compensatory damages for breach of contract is to restore the injured party to its position, had there been full performance of the contract, and not to punish the defendant.[56]  Damages for breach of contract in Pennsylvania are measured by the loss of the plaintiff, or by the gain of the defendant, "provided: (1) they were such as would naturally and ordinarily result from the breach; or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract; and (3) they can be proved with reasonable certainty."[57]  In breach of contract cases for violation of a non-compete type of contract under Pennsylvania law, damages are measured by the profits that the non-breaching party lost as a result of the breach.[58]  Specifically, the plaintiff may recover the profits it would have made on sales it "could reasonably expect to have secured had the defendant not sold in breach of the agreement."[59]

GWR asserts a number of damages claims resulting from Baez's alleged breach of contract, particularly replacement employee salaries, commissions paid to Baez resulting from a prior transaction, and the value of the declaratory judgment.[60]  GWR claims damages for

---

[55] <u>McCann v. Newman Irrevocable Trust</u>, 458 F.3d 281, 286 (3d Cir. 2006).

[56] <u>American Air Filter Company, Inc. v. McNichol</u>, 527 F.2d 1297, 1300-01 (3d Cir. 1975) (citing <u>Maxwell v. Schaefer</u>, 381 Pa. 13 (1955)).

[57] <u>Ferrer v. Trustees of UPenn</u>, 573 Pa. 310, 341 (2002).

[58] <u>American Air Filter</u>, 527 F.2d at 1299 (stating that the profits the plaintiff would have made on sales it could reasonably expect to have secured had the defendant not sold in breach of the agreement were the proper measure of damages).

[59] <u>Id.</u> at 1300.

[60] Amend. Compl. at 5, 8, 10, 11, 14.

reimbursements paid to GWR by an insurer for which Baez was given credit and compensated over $200,000 before 2007 and $109,624 in 2007 under the contract.[61]   Baez argues that the compensations paid to him before termination of the contract are irrelevant to this diversity determination.[62]   While GWR does not specify what exact transaction gave rise to Baez's commissions, it is Baez's burden to show to a legal certainty that GWR cannot recover these damages.  The Court finds he has failed to meet this burden, as GWR may be entitled to all or some of these commissions depending on the facts presented relating to the alleged breach of contract. These alleged reimbursements satisfy the amount in controversy required for diversity jurisdiction, and thus the Court need not now consider the validity of GWR's other bases for entitlement of damages.

### C. Venue

Alternatively, Defendant moves to transfer this action to the District of Puerto Rico. Baez claims that venue was never proper in this Court, and that without a statutory basis for jurisdiction, the parties cannot agree to lay venue with this Court.  Baez asserts that venue was never appropriate here because he is not subject to *in personam* jurisdiction in the Eastern District of Pennsylvania.  He claims that because the subject matter of the dispute is the CD-ROM, allegedly retained in Puerto Rico,[63] there are insufficient contacts with Pennsylvania to warrant a basis for personal jurisdiction, and hence venue, here.

GWR maintains that the parties' contract controls the choice of venue, which states

---

[61] Geary Aff. at 3.

[62] Def.'s Mot. at 12.

[63] By Order of this Court, Baez placed the disputed CD-ROM in trust with the District Court of Puerto Rico on February 15, 2008.

that "the parties hereby agree that the United States District Court for the Eastern District of Pennsylvania and the Court of Common Pleas of Delaware County, Pennsylvania shall be the exclusive forum [sic] for resolution of any disputes arising hereunder.  The parties irrevocably consent to the jurisdiction and venue."[64]  In addition, GWR contends that there are significant contacts with Pennsylvania to establish *in personam* jurisdiction, primarily that the employment contract and GWR's business originated here.

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  The Third Circuit has stated that "the plaintiff's choice of venue should not be lightly disturbed."[65]  In addition, Jumara v. State Farm Insurance Company listed a number of factors the Court may weigh in determining whether to transfer a case, including convenience to the parties, the parties' preferences, and the location of evidence.[66]

However, the Court need not reach an analysis of these factors, as the parties choice of venue clause is binding unless enforcement is unfair, unreasonable or unjust.[67]  The parties signed a contract binding them to this jurisdiction.  Baez's argument that there is no statutory basis for jurisdiction here, and therefore that venue should be transferred, is without merit, as this Court

---

[64]  Amend. Compl., Ex. A at 6.

[65]  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

[66]  Id.

[67]  In re Texas E. Transmission Corp. PBC Contamination Ins., 15 F.3d 1230, 1243-44 (3d Cir. 1994) (stating that a "forum selection clause is binding unless enforcement is unreasonable, unfair or unjust") (quoting Bremen v. Zapata Offshore Co., 407 U.S. 1, 15 (1972)).

has found that GWR sufficiently established diversity jurisdiction with this Court.  In addition, although Baez presents convincing reasons to transfer the case to Puerto Rico, based on convenience, location of documents and witnesses and location of the alleged breach, none of these amount to injustice, unfairness or unreasonableness under federal law.[68]  Mere inconvenience cannot suffice.[69]  Defendant's Motion to Transfer Venue must therefore be denied.

**CONCLUSION**

The Court finds that Defendant has presented convincing evidence that a CD-ROM is not a computer for purposes of the CFAA, and that the Plaintiff has not established a basis in federal question jurisdiction.  The Court also finds that the Plaintiff has pleaded sufficient evidence to establish the monetary amount in controversy for diversity jurisdiction.  Lastly, the Court finds that venue is appropriate in this forum.

An appropriate Order follows.

---

[68] Bremen, 407 U.S. at 16 (stating "where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable").

[69] Id.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|                       |   |                      |
|-----------------------|---|----------------------|
| GWR MEDICAL, INC.,    | : |                      |
|                       | : |                      |
| **Plaintiff,**        | : |                      |
| vs.                   | : | **CIVIL NO. 07-1103** |
|                       | : |                      |
| HECTOR M. BAEZ,       | : |                      |
|                       | : |                      |
| **Defendant**         |   |                      |

### <u>ORDER</u>

**AND NOW**, this 13th day of March, 2008, upon consideration of Defendant Hector M. Baez's Motion to Dismiss the Amended Complaint [Doc. No. 17], Plaintiff GWR Medical, Inc.'s Response thereto [Doc. No. 18], Defendant's Reply [Doc. No. 21], and after hearing evidence from the parties, it is hereby

**ORDERED** that the Motion to Dismiss is **DENIED IN PART,** insofar as it refers to diversity of citizenship jurisdiction;

**ORDERED** that the Motion to Dismiss is **GRANTED IN PART**, insofar as it refers to federal question jurisdiction.  Plaintiff's claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. is **DISMISSED** without prejudice; and

**ORDERED** that the Motion to Transfer Venue is **DENIED**;

It is further **ORDERED** that Defendant is **GRANTED** seven (7) days to transfer the CD-ROM, in trust, to the Clerk of the Court of the Eastern District of Pennsylvania.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**